# IN THE COURT OF APPEALS OF IOWA

No. 14-0600
Filed January 28, 2015

**STATE OF IOWA,**
      Plaintiff-Appellee,

**vs.**

**JONATHAN JAMES ELPHIC,**
      Defendant-Appellant.
_____

Appeal from the Iowa District Court for Franklin County, Peter B. Newell, District Associate Judge.

A defendant contends his guilty plea to harassment in the first degree lacked a factual basis. **REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.**

Mark C. Smith, State Appellate Defender, and Vidhya K. Reddy, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Alexandra Link, Assistant Attorney General, and Daniel F. Wiechmann Jr., County Attorney, for appellee.

Considered by Danilson, C.J., and Doyle and Tabor, JJ.

**TABOR, J.**

After a citizen alerted law enforcement to several disturbing posts Jonathan Elphic allegedly made on his Facebook page, the State charged him with first-degree harassment, an aggravated misdemeanor, and threat of terrorism, a class "D" felony. In return for his guilty plea to harassment, the State dismissed the terrorism charge. On appeal, Elphic contends the district court did not inform him of the nature of the offense and alleges his attorney was ineffective in letting him enter a guilty plea without a factual basis for the harassment charge. He also challenges aspects of his sentence.

Because the images Elphic acknowledged posting did not support a factual basis for harassment, we reverse his conviction and remand for further proceedings.

I.      **Background Facts and Proceedings**

According to the minutes of testimony, this case started with private messaging on Facebook between Elphic and Jackie Brehme-Hunt on the evening of November 20, 2013. Brehme-Hunt initiated a conversation with Elphic, asking if he had a chance to see his son that day. Elphic's response was disgruntled and disjointed, including the following statement: "Hypnotizing Adam Blau[1] as we speak to Barge into the High School at lunch and Kill students." When Brehme-Hunt chastised Elphic for the content of his message, he offered another rambling response:

---

[1] Blau is a Franklin County sheriff's deputy, but had no involvement in Elphic's Facebook communications.

> I home school I'm a Doctor, IDC And neither did anyone Else So IDC, I'm a Mass Murdering Millionaire I have half The Town Under Hypnosis, They'll get the Message Taking Children away to teach people Lessons, Jesus Loves Me More, Adam Blau will kill at lunch time
> SORRY!!

Elphic continued to refer to hypnotizing, killing, and mass murder as the conversation continued. At the end of the private messages, Elphic posted a "YouTube" link that he described as a "self-edited video" that he performed with an Iowa rap artist.

Then at 7:18 p.m., Elphic posted the following public message:

> There Will be a Human Under Mind Control Lunch Time High school It's our Job, no one can Stop us, If you Love your Child You'll send them home for lunch. . . K?!

Elphic followed that message by posting four photographs of infamous shooters, including Christopher Dorner, Jared Loughner, Mark Becker, and James Holmes. He also posted a dozen gruesome photographs depicting bloody bodies and decapitations.

Brehme-Hunt called the Hampton Police Department to report Elphic's disturbing messages. Police arrested Elphic at 8:34 p.m.—charging him with disorderly conduct and harassment. The arrest report indicated Elphic was "drunk" at the time of his arrest. The arresting officer asked Elphic why he would send such messages, and Elphic said it was his First Amendment right, and "he really feels like someone should go to the school and shoot up the place," but "advised he would not do it." Elphic told the officer "he did not threaten to kill students at the school, he said he was going to have someone else do it."

Six days later, the State filed its trial information, alleging two counts: harassment in the first degree, in violation of Iowa Code section 708.7(1)(a)(1) (2013), and threat of terrorism in violation of Iowa Code section 708A.5.

In return for the State's dismissal of the terrorism charge, Elphic entered a guilty plea to harassment in the first degree on February 3, 2014. In his written guilty plea, he stated he was twenty-nine years old and had completed a GED. The written plea also listed the rights he was giving up, stated that the State would recommend a two-year suspended sentence, and stated that as a condition of his probation, he would undergo a mental health evaluation and comply with its recommendations. The plea listed the elements of harassment, but omitted the element that enhances harassment to first degree.

As far as a factual basis for the crime, the written plea stated: "I admit to the court that on or about the 20th day of November 2013 I posted a number of photographs on Facebook which were graphic and could have been interpreted as annoying or threatening to another."

Elphic appeared for a plea hearing on February 24, 2014. He had been in custody since his arrest. Instead of a full colloquy under Iowa Rule of Criminal Procedure 2.8(2)(b), the district court referred Elphic to the written plea and his previous discussions with defense counsel. In regard to the factual basis for the plea, the court engaged in the following exchange with Elphic:

> Q. And Mr. Elphic, it is my understanding that you posted some message on Facebook that you were going to kill some children at the high school. A. No, Your Honor.
> Q. All right. What is it that you did that makes you feel that you committed this offense? A. Put threatening photographs that could be considered a threat.

> Q. Okay. So you communicated with someone through electronic communication without a legitimate purpose and in a manner that was likely to cause them alarm or fear. Is that correct?
> A. Yes, Your Honor.

The court also asked defense counsel and the county attorney if it could "rely on the minutes of testimony as a factual basis as well" and they responded affirmatively. The court accepted Elphic's plea to the aggravated misdemeanor. At an April 7, 2014 sentencing hearing, the court imposed an indeterminate two-year prison term. Elphic now appeals.

## II. Principles for Challenging Guilty Plea/Standards of Review

Before accepting a guilty plea, the district court is required to find a factual basis supporting the plea. Iowa R. Crim. P. 2.8(2)(b); *State v. Finney*, 834 N.W.2d 46, 61 (Iowa 2013). A factual basis differs from the evidence required at a trial to prove a defendant's guilt beyond a reasonable doubt. *Finney*, 834 N.W.2d at 62 ("Our cases do not require that the district court have before it evidence that the crime was committed beyond a reasonable doubt, but only that there be a factual basis to support the charge." citing *State v. Ortiz*, 789 N.W.2d 761, 768 (Iowa 2010)). Establishing a factual basis requires the defendant "to acknowledge facts that are consistent with the elements of the crime." *Rhoades v. State*, 848 N.W.2d 22, 30 (Iowa 2014).

We review ineffective assistance of counsel claims de novo because they are grounded in the Sixth Amendment. *State v. Clay,* 824 N.W.2d 488, 494 (Iowa 2012). Elphic bears the burden to prove by a preponderance of evidence his plea counsel breached an essential duty and the breach resulted in prejudice. *See State v. Straw,* 709 N.W.2d 128, 133 (Iowa 2006) (citing *Strickland v.*

*Washington,* 466 U.S. 668, 687 (1984)). If counsel permitted Elphic to plead guilty and to waive his right to file a motion in arrest of judgment when the record revealed no factual basis to support the guilty plea to harassment, counsel breached an essential duty.[2] *See State v. Philo,* 697 N.W.2d 481, 485 (Iowa 2005). In the absence of a factual basis, we presume prejudice. *See State v. Schminkey,* 597 N.W.2d 785, 788 (Iowa 1999).

## III. Analysis of Factual Basis Claim

Elphic entered a plea of guilty to harassment in the first degree, which included the following elements:

> 1. a. A person commits harassment when, with intent to intimidate, annoy, or alarm another person, the person does any of the following:
> (1) Communicates with another by telephone, telegraph, writing, or via electronic communication without legitimate purpose and in a manner likely to cause the other person annoyance or harm.
> . . . .
> 2. a. A person commits harassment in the first degree when the person commits harassment involving a threat to commit a forcible felony . . . .

Iowa Code § 708.7(1)(a)(1), (2)(a) (2013).

"At the time of the guilty plea, the record must disclose facts to satisfy all elements of the offense." *Rhoades*, 848 N.W.2d at 29. Both in his written plea and at the plea hearing, Elphic expressly narrowed the evidence that could be considered in support of a factual basis. In both forums his only admission was to posting the graphic photographs. When the district court directly asked Elphic

---

[2] Two justices of our supreme court have observed that this tool to examine the factual basis for guilty pleas is more akin to plain-error review than a determination counsel was incompetent. *See Rhoades v. State,* 848 N.W.2d 22, 33–34 (Iowa 2014) (Mansfield, J., specially concurring).

if he conveyed the Facebook messages saying he was going to "kill some children at the high school," Elphic responded: "No, Your Honor." Elphic then acknowledged posting photographs "that could be considered to be a threat." The court next affirmed Elphic's admission to communicating without legitimate purposes and in a manner likely to cause the recipient alarm or fear. The court then asked defense counsel whether it could rely on the minutes to satisfy a factual basis as well, and counsel replied: "yes."

On appeal, Elphic argues the court's authorization to consider the minutes of evidence in support of the factual basis would "necessarily be limited to the photographs" and would not include "the text of the verbal messages." Elphic contends the photographs alone do not establish a threat to commit a forcible felony. He asserts the photographs were "from a publicly available source such as the internet" and there was "no indication that the photographs were taken by Elphic or that he was responsible for the grisly scenes depicted in a number of them."

The State argues Elphic's plea was not rendered invalid by his "apparent denial during the plea colloquy of posting messages other than the photographs." In support of its argument, the State cites *North Carolina v. Alford*, 400 U.S. 25, 37-38 (1970) for the proposition that a defendant may take the benefit of a plea deal while maintaining his innocence to some or all of the facts supporting the charge.[3] We reject the State's argument because Elphic did not enter an *Alford*

---

[3] The State also cites *United States v. Gaskins*, 485 F.2d 1046, 1047–49 (D.C. Cir. 1973), which held it was an abuse of discretion for a district court to refuse to accept a guilty plea based on a defendant's denial of guilt where the record otherwise shows a

plea. Elphic did not acknowledge at the plea hearing that his interests required entry of a guilty plea despite the State's strong evidence of his actual guilt. *See State v. Klawonn*, 609 N.W.2d 515, 521 (Iowa 2000) (noting that when a defendant professes innocence, "an *Alford* plea is only entertained after the 'defendant intelligently concludes that his interests require entry of a guilty plea and the record before the judge contains strong evidence of actual guilt'").

Instead, Elphic flatly denied the conduct which arguably established a threat to commit a forcible felony, the element which enhanced the offense to harassment in the first degree. At least one other jurisdiction has determined it is error for a court to find a factual basis exists "when the defendant actively contests a fact constituting an element of the offense in the absence of circumstances warranting the conclusion that the defendant's protestations are 'unworthy of belief.'" *See United States v. Culbertson*, 670 F.3d 183, 190–91 (2d Cir. 2012).

Generally when a defendant alleges a Sixth Amendment violation stemming from the lack of a factual basis, the relevant inquiry involves "an examination of whether counsel performed poorly by allowing [his client] to plead guilty to a crime for which there was no objective factual basis in the record." *Finney*, 834 N.W.2d at 62. For that purpose, recourse to the entire record to determine a factual basis is appropriate. *Id.*

But the question in this case is whether counsel performed poorly by allowing Elphic to plead guilty to harassment in the first degree when he

factual basis. We note *Gaskins* has been rejected by numerous other courts. *See State v. Paris*, 578 S.E.2d 751, 752 n.6 (S.C. Ct. App. 2003) (collecting federal cases).

expressly denied a critical element of the offense at the plea hearing. Elphic denied sending Facebook messages that contained a threat[4] to commit a forcible felony. Moreover, Elphic did not acknowledge the State's evidence strongly negated his claim of innocence on that element as would be required for a valid *Alford* plea. *See State v. Knight*, 710 N.W.2d 83, 84–85 (Iowa 2005). Under these circumstances, Elphic's counsel was ineffective in permitting him to go forward with the guilty plea to harassment in the first degree. Accordingly, we reverse his conviction and remand to allow the State an opportunity to proceed against Elphic under the original trial information.[5] *See State v. Gines*, 844 N.W.2d 437, 442 (Iowa 2014).

**REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.**

---

[4] Our courts have interpreted the statutory term "threat" to mean a "true threat," i.e., "understandable as a threat by a reasonable person of ordinary intelligence." *See State v. Soboroff*, 798 N.W.2d 1, 8 (Iowa 2011) (citing *State v. Milner,* 571 N.W.2d 7, 10 (Iowa 1997) (interpreting "threat" in Iowa Code section 712.8)). If a reasonable person would view the expression as a joke, idle talk, or statements of political hyperbole, it is not a "true threat." *Id.*

[5] Given our reversal on this ground, it is not necessary to address Elphic's other claims.