THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS 
 PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
The State, Respondent,
v.
Johnny L. Knight, Appellant.
 
 
 

Appeal From Anderson County
 Alexander S. Macaulay, Circuit Court Judge
 J. Cordell Maddox, Jr., Circuit Court Judge

Unpublished Opinion No. 2006-UP-109
Heard December 6, 2005  Filed February 21, 2006

REVERSED

 
 
 
David F. Stoddard, of Anderson, for Appellant.
Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, Assistant Attorney General David A. Spencer, all of Columbia; and Solicitor Christina Theos Adams, of Anderson; for Respondent.
 
 
 

PER CURIAM:  Johnny Knight was convicted of possession of methamphetamine (or crank) and sentenced to two years imprisonment, suspended upon the service of two years probation.  We reverse.  
FACTS
On July 3, 2003, Deputy Stanley Jones, Jr., from the Anderson County Sheriffs Department noticed a vehicle weaving on the road, and he stopped the vehicle.  After the female driver failed the field sobriety test, Deputy Jones arrested her for driving under the influence.  A search incident to arrest produced crank.  Deputy Jones also ordered the passenger, Knight, to get out of the vehicle.  Jones noticed a large bulge in Knights left pants pocket, and he feared it was a weapon.  After frisking Knight, Jones determined the object felt metallic, and he retrieved brass knuckles from Knights pocket.  Knight was arrested for possession of a concealed weapon.  Pursuant to a search incident to arrest, Jones discovered two grams of crank hidden inside a cigarette package in Knights right pocket.  An arrest warrant was later issued, charging Knight with possession of crank.  The magistrate did not issue a warrant for possession of a concealed weapon because the statute provides an exception for brass knuckles where there is no evidence they were carried in furtherance of a crime.[1]  
On February 10, 2004, a hearing was held on Knights motion to suppress the crank.  Deputy Jones testified regarding the events leading up to Knights arrest, and he stated he did not know at the time of Knights arrest that carrying brass knuckles without intent to commit a crime was excepted from the concealed weapon statute.  In response to questioning by the solicitor, Deputy Jones affirmed there was no evidence that Knight was using the brass knuckles in furtherance of a crime.  Knight then moved to suppress the crank evidence, arguing mere possession of brass knuckles, without an intent to commit a crime, was not a crime under the concealed weapon statute.  Therefore, he argued, there was no probable cause for the arrest.  Finding under the totality of the circumstances, there was evidence that would cause a prudent person to believe that Knight had committed the offense of carrying a concealed weapon in furtherance of the crime of unlawful possession of a controlled substance, the trial court held the arrest was valid and denied the motion to suppress.  
In lieu of pleading guilty, Knight elected to have a bench trial because he wanted to preserve the suppression issue for appeal.  The parties agreed the State could summarize the testimony of Deputy Jones for the court instead of having Jones testify.  The State summarized Deputy Joness testimony for the court.  Although Knight stipulated the substance found was crank, he renewed his objection to the search that led to the discovery of the crank evidence.  Knight did not present any evidence after the court denied his motion for a directed verdict.  The trial court found Knight guilty as charged and sentenced him to two years imprisonment, suspended upon the service of two years probation.  This appeal followed.
STANDARD OF REVIEW
In criminal cases, the appellate court sits to review errors of law only and is bound by the factual findings of the trial court unless clearly erroneous.  State v. Wilson, 345 S.C. 1, 5-6, 545 S.E.2d 827, 829 (2001).  The trial courts factual findings on whether evidence should be suppressed due to a Fourth Amendment violation are reviewed only for clear error.  State v. Brockman, 339 S.C. 57, 66, 528 S.E.2d 661, 666 (2000).  On appeal from a suppression hearing, this court is bound by the circuit courts factual findings if any evidence supports the findings. State v. Abdullah, 357 S.C. 344, 349, 592 S.E.2d 344, 347 (Ct. App. 2004), cert. denied (Nov. 19, 2004).  Our review in Fourth Amendment search and seizure cases is limited to determining whether any evidence supports the trial courts finding.  State v. Green, 341 S.C. 214, 219 n.3, 532 S.E.2d 896, 898 n.3 (Ct. App. 2000). 
LAW/ANALYSIS
Knight stipulates the brass knuckles were validly seized pursuant to a Terry[2] search.  He argues, however, that there was no probable cause to arrest him for possession of a concealed weapon, and therefore, the search incident to the arrest was unlawful.  The State argues that probable cause existed to arrest Knight for possessing the brass knuckles in furtherance of a crime and that, even if the arrest were illegal, the crank was admissible pursuant to inevitable discovery.  Because Knight stipulates that Deputy Jones had probable cause to conduct a Terry frisk for weapons, the only question we must address is whether his arrest, and thus, the subsequent search incident to arrest, was valid.  
Probable cause for a warrantless arrest exists when, considering the totality of the circumstances surrounding the information at the officers disposal, there was sufficient information to cause a reasonable person to believe that criminal activity has been or is being committed.  State v. Goodwin, 351 S.C. 105, 110, 567 S.E.2d 912, 914 (Ct. App. 2002); see State v. Moultrie, 316 S.C. 547, 552, 451 S.E.2d 34, 37 (Ct. App. 1994) ([P]robable cause for a warrantless arrest generally exists where the facts and circumstances within the arresting officers knowledge are sufficient for a reasonable person to believe that a crime has been or is being committed by the person to be arrested.(quoting United States v. Miller, 925 F.2d 695, 698 (4th Cir. 1991))).  The burden of establishing probable cause and the existence of circumstances constituting an exception to the general prohibition against warrantless searches is upon the prosecution.  State v. Freiburger, 366 S.C. 125, 132, 620 S.E.2d 737, 740 (2005).
The concealed weapon statute provides that it is illegal for a person to carry a deadly weapon usually used for the infliction of personal injury concealed on his person.  S.C. Code Ann. § 16-23-460 (2003).  However, the section further provides that it does not apply to rifles, shotguns, dirks, slingshots, metal knuckles, or razors unless they are used with the intent to commit a crime or in furtherance of a crime.  Id.  There are no South Carolina cases discussing this exception to the concealed weapon statute or what constitutes evidence that the weapon was used with the intent to commit a crime or in furtherance of a crime.  
The parties do not dispute that the mere possession of brass knuckles, without more, does not violate the concealed weapon statute.  Thus, we must focus our analysis on whether probable cause existed for a warrantless arrest of Knight pursuant to the portion of the statute criminalizing possession of concealed brass knuckles when used in furtherance of a crime.  
Reviewing the evidence and the totality of the circumstances surrounding the information at Deputy Joness disposal, we find there was not sufficient information to cause a reasonable person to believe that Knight was concealing brass knuckles in furtherance of a crime.  The only evidence presented at trial was the testimony of Deputy Jones, and he affirmatively testified there was no evidence the brass knuckles were being used in furtherance of a crime. Although the State argues the trial court properly considered the totality of the circumstances and found the nexus between weapons and drugs gave rise to probable cause to believe Knight possessed the brass knuckles in furtherance of drug transportation, there is no evidence to support that finding.[3]  Based on the only information presented at trial, the State failed to meet its burden of proving probable cause existed.  Thus, the arrest was illegal, and the crank discovered in the search incident to the illegal arrest should have been suppressed. 
However, the State further argues:  (1) even if the arrest were illegal, the crank was admissible due to inevitable discovery; and (2) the search was reasonable under the circumstances because there was a heightened sense of danger when Deputy Jones discovered the occupants of the vehicle had both weapons and crank.  We disagree.
Citing State v. Smith, 329 S.C. 550, 495 S.E.2d 798 (Ct. App. 1998), the State asserts the discovery of the brass knuckles warranted a further weapons frisk which would inevitably lead to discovery of the crank.  Under the inevitable discovery doctrine, evidence that may have been obtained in violation of a defendants constitutional protections may, nevertheless, be admitted at trial if it would have been discovered inevitably by some other lawful means.  See Nix v. Williams, 467 U.S. 431, 448 (1984) (Exclusion of physical evidence that would inevitably have been discovered adds nothing to either the integrity or fairness of a criminal trial.).  In Smith, this court noted that under the plain feel doctrine, the officer validly seized a baggy containing drugs he felt during a Terry pat-down for weapons because the officer could determine the object was contraband as soon as he felt the baggy, without additional manipulation, and the defendant admitted that the bag contained his reefer.  Smith, 329 S.C. at 560-61, 495 S.E.2d at 803-04.        
 Smith is inapplicable in the present case.  Although discovery of the brass knuckles may have led to a reasonable search to insure Knight had no further weapons, it would not have led to the inevitable discovery of the crank.  According to Deputy Joness testimony, the crank was discovered inside a cigarette box in Knights pocket.  Deputy Jones could not have discovered via the plain feel doctrine that the cigarette box concealed crank.  The search of the cigarette box exceeded the bounds of the Terry search.  See State v. Abrams, 322 S.C. 286, 289, 471 S.E.2d 716, 718 (Ct. App. 1996) (noting that the limited purpose of Terry was satisfied when the officer discovered there were no weapons on Abrams, and the further search of a Tylenol bottle concealing crack cocaine was impermissible and the drugs should have been suppressed).  Thus, we find no merit to the States argument that the crank concealed in Knights cigarette box would have inevitably been discovered during the weapons pat-down.
Despite the States argument that there is a nexus between drugs and weapons that would lead to probable cause, no evidence was presented in this case that would support probable cause to arrest Knight for possessing a concealed weapon in furtherance of a crime.  Because the testimony elicited by the State amounted to a denial of probable cause to arrest Knight, we find the States argument unavailing.  
CONCLUSION
There was no evidence in the present case that Knight possessed the brass knuckles in furtherance of a crime.  Thus, Knight was unlawfully arrested and the search incident to arrest was invalid.  The trial court erred in failing to suppress the crank found as a result of the invalid search.  Accordingly, Knights conviction and sentence are
 REVERSED.
HEARN, C.J., HUFF and BEATTY, JJ., concur.

[1]  It is illegal for a person to carry a concealed deadly weapon.  S.C. Code Ann. § 16-23-460 (2003).  However, the section further provides that it does not apply to . . . metal knuckles . . . unless they are used with the intent to commit a crime or in furtherance of a crime.  Id. 
[2]  Terry v. Ohio, 392 U.S. 1, 27 (1968) (noting that an officer must have a reasonable suspicion that an individual is armed and dangerous before conducting a pat-down or frisk of the person).
[3]  In support of this argument, the State relies on United States v. Pasquarille, 20 F.3d 682, 686-88 (6th Cir. 1994) (finding probable cause existed to search a van, based on the law enforcement officers perspective, where the van and driver met an informants description of someone selling cocaine); State v. Butler, 353 S.C. 383, 390-93, 577 S.E.2d 498, 501-02 (Ct. App. 2003) (discussing whether an officer had a reasonable suspicion to conduct a pat- down or frisk of a suspect reasonably believed to be armed); and State v. Blassingame, 338 S.C. 240, 248-50, 525 S.E.2d 535, 539-40 (Ct. App. 1999) (upholding a stop and frisk where the police officer had a reasonable suspicion that Blassingame fit the description of an armed suspect).  These cases are factually distinguishable from the present case because they address whether the initial stop or frisk was supported by probable cause based on the officers reasonable belief that he was in danger, that the suspect had weapons, or that a crime was being committed.  These cases do not address whether a search incident to arrest was supported by probable cause where the officer mistakenly believed the suspects actions were criminal or where there was no indication that the suspects actions constituted a crime.